UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
SERGUEI ARTEMOV,                                           :
                                                           :
                     Plaintiff,                             :   **MEMORANDUM DECISION AND**
                                                           :   **ORDER**
      - against -                                        :
                                                           :   20-cv-1892 (BMC)
                                                           :
TRANSUNION, LLC; EXPERIAN                                  :
INFORMATION SOLUTIONS, INC.; EQUIFAX                       :
INFORMATION SERVICES, LLC; BANK OF                         :
AMERICA, N.A.; and CITIBANK, N.A.,                         :
                                                           :
                     Defendants.                            :
                                                           :
---------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff brings this action for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. He contends that multiple credit entries in his credit report were inaccurate or misleading due to the following: (1) two accounts reflected a non-zero past due balance while reporting that the account had been charged off; and (2) a third charged off account was reporting a lower past due balance than what was really owed on the account.

      Before me are defendants' motions to dismiss the complaint under Fed. R. Civ. 12(b)(6) and motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).[1] Because plaintiff's first two credit entries were neither inaccurate nor misleading, the motion is granted as to all claims relating to these accounts. As to the third account, even if defendants had reported that plaintiff had a higher amount of bad debt, any alleged harm – a lower credit score and denial of credit – would have occurred regardless. Defendants' motions are therefore granted.

---

[1] Four of five defendants filed a joint motion. Defendants Experian and Bank of America filed theirs under Rule 12(b)(6), but defendants Equifax and TransUnion had already filed an answer, so theirs was brought under Rule 12(c). Citibank has not entered an appearance, but as I will explain below, plaintiff has failed to state a claim against it based on the arguments raised by its consumer reporting agency co-defendants.

**BACKGROUND**

Of the three challenged accounts appearing on plaintiff's credit report, the first and second accounts were with defendant Bank of America, N.A. ("BOA"), and the third was with defendant Citibank, N.A.

Defendant Equifax prepared and issued credit reports about plaintiff that included information as to the two BOA accounts. Both were listed as "charged off" and "closed" and contained a non-zero past due balance. The scheduled monthly payment line for both was "zeroed out." Plaintiff claims that representing the account as charged off, while listing a past due balance, misleads potential creditors into believing that he has an ongoing monthly liability.

As to plaintiff's Citibank account, defendants Experian and TransUnion prepared and issued credit reports reflecting that it had been charged off. But the credit entries also showed different non-zero amounts for the past due balance and overall actual balance. Specifically, the past due balance was lower than the overall balance, but plaintiff claims that these two numbers should have been equal. He does not allege that the overall balance was inaccurate. Nevertheless, since one number was lower than the other, he contends the manner in which this information was presented caused his credit score to decrease, resulting in a denial of credit.

After reviewing his credit reports, plaintiff notified the three consumer reporting agencies, Experian, TransUnion, and Equifax (the "CRAs") that he disputed the accuracy of the information they were reporting. He sent them separate letters disputing the trade lines associated with the three accounts. In response, the CRAs notified BOA and Citibank of plaintiff's dispute, but the challenged information was never deleted or changed.

Plaintiff alleges that BOA and Citibank willfully or negligently failed to conduct a proper investigation into the accuracy of the information they reported to the CRAs, in violation of 15

U.S.C. § 1681s-2(b); and that the CRAs failed to follow reasonable procedures to assure the maximum possible accuracy of the information reported and also failed to delete inaccurate information from his credit file after receiving notice of such inaccuracies.  See 15 U.S.C. §§ 1681e(b); 1681i.

## DISCUSSION

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard applicable to motions for judgment on the pleadings is the familiar one under Fed. R. Civ. P. 12(b)(6).  See King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002).

To survive either motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  When assessing a complaint's sufficiency, the Court assumes that all of the factual allegations in it are true, but the Court disregards legal conclusions couched as factual allegations.  Id.

### I.     FCRA Claims

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).  "The FCRA creates a private right of action ... for the negligent or willful violation of any duty imposed under the statute." Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995); see 15 U.S.C. §§ 1681n(a); 1681o.  "A plaintiff may recover actual, punitive, or statutory damages for willful violations, but may recover only

3

actual damages for negligent violations." Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 234 (S.D.N.Y. 2014).

The FCRA commands that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If a consumer disputes information contained in his credit report to a CRA, the CRA is required to notify the entity that furnished the disputed information of the consumer's dispute. See Jenkins v. AmeriCredit Fin. Servs., Inc., No. 14-cv-5687, 2017 WL 1325369, at *4 (E.D.N.Y. Feb. 14, 2017). In considering a challenge under § 1681e(b) or § 1681i, the "threshold question" is whether the disputed credit information is accurate; if the information is accurate, "no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994); see also Khan v. Equifax Info. Servs., LLC, No. 18-cv-6367, 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019).

When the CRA complies with its obligation to notify the challenged information's furnisher, the furnisher must conduct an investigation, review relevant information provided by the CRA, report the results of the investigation to the CRA, report any inaccuracies to all other consumer reporting agencies to which the information was provided, and promptly modify, delete, or block the reporting of that information. See 15 U.S.C. § 1681s-2(b).

Courts in the Second Circuit apply a "reasonable investigation" standard to determine whether a furnisher of information has satisfied its obligations under 15 U.S.C. § 1681s-2(b). See Mund v. Transunion, No. 18-cv-6761, 2019 WL 955033, at *2 (E.D.N.Y. Feb. 27, 2019). Under this standard, furnishers of information "satisfy their investigation obligations under the

4

FCRA by reviewing information provided by the CRA, investigating, and reporting any inaccuracies to all consumer reporting agencies to which the furnishers provide information." Jenkins, 2017 WL 1325369, at *6 (internal quotation marks, citations, and alterations omitted). "The FCRA does not require that a furnisher of information delete a consumer's disputed account upon receiving a notice of dispute, but rather, 'simply requires the furnisher of information to investigate and to report information from the investigation.'" Id. (citation omitted).

A claim is stated under § 1681s-2(b) only if a plaintiff can show that: (1) the furnisher received notice of a credit dispute from a CRA; and (2) the furnisher then acted in "willful or negligent noncompliance with the statute." See Markovskaya v. Am. Home Mortg. Servicing, Inc., 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012). Neither BOA nor Citibank dispute that the CRAs provided them with notice of plaintiff's dispute, so only the second prong is at issue here.

Accuracy is also an essential element of a claim for negligent or willful violation of § 1681s-2(b) of the FCRA. See, e.g., Pittman v. Experian Info. Sols., Inc., 901 F.3d 619, 629 (6th Cir. 2018); Chiang v. Verizon New England Inc., 595 F.3d 26, 37-38 (1st Cir. 2010); Holland v. Chase Bank USA, N.A., --- F. Supp. 3d ----, No. 19-cv-233, 2020 WL 4340726, at *4 (S.D.N.Y. July 28, 2020). Thus, "a threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under § 1681s-2(b)." Pittman, 901 F.3d at 629. A credit entry is inaccurate if it "is patently incorrect, or [if] it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Kilpakis v. JPMorgan Chase Fin. Co., LLC, 229 F. Supp. 3d 133, 141 (E.D.N.Y. 2017) (citing Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998)).

**II.     Charge Off**

Before discussing the merits of the case, it would be useful to explain the definition of a "charge off." A charge off, as defined in Black's Law Dictionary, is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt."[2] It qualifies as a delinquency. See Wilson v. First Bank of Delaware, No. 10-cv-11345, 2010 WL 2696981, at *3 n.2 (E.D. Mich. July 7, 2010) ("Delinquency is defined as 'a debt that is overdue in payment.'") (quoting Black's Law Dictionary).

One court has explained that charging off a debt "is a business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes." Christian v. Equifax Info. Servs., LLC, No. 18-cv-13682, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020). Banks are in fact required under Federal Regulations to charge off debt that is past due by over 180 days. See In re Anderson, 884 F.3d 382, 386 n.2 (2d Cir. 2018) (citing 65 Fed. Reg. 36,903, 36,904). Otherwise, their balance sheets would misleadingly reflect accounts as assets that have little chance of achieving their full valuation. Thus, the generally accepted accounting principle is codified into federal regulations adopted by the Federal Reserve Board and the Office of the Comptroller of Currency. Because it is not a voluntary act, the creditor has no choice in the matter. See Wilder v. J.C. Christensen & Assocs., Inc., No. 16-cv-1979, 2016 WL 7104283, at *5 (N.D. Ill. Dec. 6, 2016); Bunce v. Portfolio Recovery Assocs., LLC, No. 14-2149, 2014 WL 5849252, at *2 (D. Kan. Nov. 12, 2014).

Creditors also have a financial incentive to charge off bad debt. By charging off a debt, a creditor is afforded some tax benefits since the amount constitutes "a bad loss deduction against then current profits." See In re McGarvey, No. 15-28908-E-13, 613 B.R. 285, 307 n.14 (Bankr.

---

[2] Black's Law Dictionary (11th ed. 2019).

E.D. Cal. Feb. 21, 2020).  This makes sense.  If creditors could not write off bad debt, the result would be an increase in the cost of doing business and likely less credit availability and at higher interest rates.

Since financial institutions are required to comply with this federal requirement, it follows that charging off an account does not equate to debt forgiveness.  Any other conclusion would be illogical; it would simply encourage a consumer to take out massive amounts of debt and wait around six months for it to be wiped away.  Thus, the act "does not diminish the legal right of the original creditor to collect the full amount of the debt."  Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1297 (11th Cir. 2016); see In re McGarvey, 613 B.R. at 307 n.14 ("The creditor may continue to try and collect (or sell it to someone else to try and collect) the debt. The 'charge-off' does not change the legal enforceability of the debt."); Dye v. TransUnion, LLC, No. 13-cv-1094, 2013 WL 5663094, at *3 (D. Nev. Oct. 15, 2013) ("[Charged off] debt is still enforceable.").  Creditors, for example, could attempt to collect the debt themselves – either by utilizing internal collections staff or by contracting with a third-party agent willing to collect the debt on their behalf.  Alternatively, they could sell the debt to a third-party purchaser at a discounted price based on the reduced likelihood of collection.  See Hinkle, 827 F.3d at 1297-98.

But charging off an account is not the same as "accelerating" the debt.  See Christian, 2020 WL 2087869, at *1.  "If a debt is accelerated, the full amount – including all monthly payments and interest – becomes due immediately."  Id.  Once a "debt is accelerated, the debtor would not be able to continue to make monthly payments in an amount less than the full amount due."  Id.  Conversely, if the debt has not been accelerated, a consumer is still able and obligated

7

to make, and a creditor may still collect, a monthly payment on the account that is less than the full balance. Id. at *4.

Lastly, a charge off is "one of the most adverse factors that can be listed on a credit report." Hanks v. Talbots Classics Nat. Bank, No. C 12-2612 SI, 2012 WL 3236323, at *1 n.2 (N.D. Cal. Aug. 6, 2012); see F.T.C. v. TRW Inc., 784 F. Supp. 361, 362 (N.D. Tex. 1991) (defining "Serious Derogatory Information" as, among others, a bankruptcy, charge off, foreclosure proceedings, and repossession). In fact, according to Experian's website, a charge off is "considered a derogatory entry in your credit file – a serious negative event – and it can adversely affect your credit scores and your ability borrow additional funds."[3]

## III.    BOA's reporting a past due balance

Having laid this foundation, it should be obvious that, even though the banks labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance. Plaintiff has provided no authority stating otherwise. BOA's act in charging off plaintiff's debt was mandated under federal regulation and did not absolve plaintiff of his promise to pay the debt.

Plaintiff takes issue with the continued listing of a non-zero past due balance for another reason. He contends that this suggests to a potential creditor that he has to make monthly payments on these accounts. This argument lacks merit.

Plaintiff's allegations against BOA fail because listing a past due balance for a charged off account was factually accurate and not misleading. At any moment, BOA could decide to collect the charged off debt and seek the delinquent amount. Furthermore, the information contained in the credit report was not misleading because it never suggested a reoccurring

---

[3] See https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/ (last visited Aug. 28, 2020).

monthly obligation: (1) the account was marked as "charged off" and "closed"; and (2) even plaintiff concedes that the scheduled monthly payment line item in his BOA accounts had been "zeroed out."

The out-of-circuit case on which plaintiff relies, Jackson v. Equifax Info. Servs., LLC, No. 18-cv-271, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019), is distinguishable. There, the plaintiff's credit report incorrectly reported a scheduled monthly payment for an account with a remaining balance of $7411, even though it had been charged off. The court reasoned that "the monthly payment trade line could materially mislead a prospective lender about the nature of [p]laintiff's obligation to make payments on this account particularly when the account continue[d] to list a balance despite being charged off." Id. at *4. Jackson therefore hinged not only on the accuracy of the information being reported, but on whether the combined reporting of a scheduled monthly payment and a positive balance on an account that had otherwise been charged off could materially mislead a prospective creditor.

This case is different. Plaintiff does not allege that the credit entries associated with his BOA accounts reflected a scheduled monthly payment. Merely listing a past due balance – an undisputed legal obligation – for a charged off account is quite different than incorrectly reporting a future monthly responsibility when such requirement no longer exists. See Lovelace v. Equifax Info. Servs. LLC, No. cv-18-408, 2019 WL 2410800, at *4 (D. Ariz. June 7, 2019) (plaintiff had sufficiently pled an inaccuracy, where the complaint alleged an erroneously scheduled monthly payment even though the account was charged off and closed and the payment schedule had been accelerated); Freedom v. Citifinancial, LLC, No. 15 C 10135, 2016 WL 4060510, at *6 (N.D. Ill. July 25, 2016) ("reporting a 'scheduled payment' could create the

9

mistaken impression that [p]laintiff still owed on the account, which was not accurate because his debt had been discharged in bankruptcy").

Our case is more analogous to situations in which courts have held that reporting a monthly payment on a charged off debt is not actionable under the FCRA because the plaintiffs were still permitted and obligated to make monthly payments on the account in an amount less than the full balance. See, e.g., Christian, 2020 WL 2087869, at *4; Williams, 2019 WL 3243737, at *4-5. Here, there is no chance that a potential creditor would be misled because the monthly payment listed is zero. Any possible "confusion" plaintiff alleges is dispelled by this unequivocal declaration.

The allegations against BOA are therefore not actionable because a prospective lender, once presented with information that the account had been charged off and closed, would not be misled. Rather, a potential creditor is provided accurate information: (1) that plaintiff still owes a past due balance on the debt; and (2) that plaintiff's willingness and ability to pay back a potential loan are questionable because, at any given moment, BOA (or a third-party purchaser) could decide to seek enforcement of the remaining delinquent balance.

If I were to adopt plaintiff's reasoning – that a charge off categorically precludes a creditor from reporting the total past due amount – it would vitiate the entire existence and purpose of credit reporting companies: to present an evenhanded and fair representation of a particular consumer's ability and willingness to pay off debt, so as to encourage a creditor to take a risk and extend a line of credit to a particular consumer. See Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1158 (11th Cir. 1991). Under the regime advocated by plaintiff, potential creditors would hesitate to extend any line of credit until an independent and

more thorough investigation into the consumer's financial background was completed, thereby increasing the cost of doing business and interest rates for consumers.

**IV.     Citibank's reporting a lower past due balance**

Plaintiff's credit report associated with his Citibank account reflected a past due balance that was lower than the true overall balance. Based on this purported inaccuracy, plaintiff advances the peculiar argument that he was harmed by Citibank's and the CRAs' failure to report the accurate and higher number for his past due balance. Even after accepting his factual assertion that the lower number was inaccurate, I am nevertheless compelled to grant defendants' motion because even a "violation of one of the FCRA's procedural requirements may result in no harm." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1550 (2016).

To satisfy Article III standing, a plaintiff must demonstrate: (1) an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. Id. at 1547 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). However, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549. Rather, to maintain an action under the FCRA, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or 'imminent'" as a result of a violation. Id. at 1548. In other words, "not all inaccuracies cause harm or present any material risk of harm." Id. at 1550.

The denial of credit and other similarly adverse consequences are often the basis for FCRA damages. Furthermore, "emotional damages may also be freestanding … where an inaccuracy alone causes emotional damages." See Wenning v. On-Site Manager, Inc., No. 14-

cv-9693, 2016 WL 3538379, at *19 (S.D.N.Y. June 22, 2016) (citing Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995)).

On the face of the complaint, plaintiff has not shown an injury in fact sufficient to confer standing. To understand why, it helps to compare the situation that plaintiff says should have occurred under the FCRA, with what actually happened. Plaintiff's argument necessarily would have required defendants to have disclosed that his past due balance was actually higher. His credit report would have listed more bad debt and the same credit score (or probably a lower credit score). The conclusion is inescapable that plaintiff would have suffered the same result.

Regardless of the amount reflected in the past due balance, plaintiff's credit report listed three charged off accounts that constituted serious derogatory information. Thus, to accept plaintiff's theory, one must believe the following scenario is plausible:

> Potential Creditor Employee A: Hey Bob, you know that guy from yesterday we rejected for a personal loan because of his low credit score?
>
> Potential Creditor Employer B: You mean the guy with three charged off accounts, where the third one listed a past due balance of $100?
>
> Potential Creditor Employee A: That's the one. He's on the phone saying there was a mistake on his credit report. He says that his past due balance for the Citibank account was actually $200, and he's wondering whether this changes our mind.
>
> Potential Creditor Employer B: So besides being delinquent on three loans, he really had more bad debt? That's a gamechanger. Get this man a loan!

The implausible scenario above reveals how the alleged inaccuracy could not have made a difference: in either case, the denial of credit was going to happen. Plaintiff's conclusion to the contrary is just that, a conclusion, and one that makes no sense.

For the same reason, plaintiff's allegation that he suffered "emotional distress" from the denial of credit also fails. Even if the higher amount was reported, his application for credit was

12

going to be denied, resulting in the same visceral response by plaintiff.  See Shimon v. Equifax Info. Servs. LLC, 431 F. Supp. 3d 115, 123-24 (E.D.N.Y. 2020).

## V. Leave to Amend

In his opposition to these motions, plaintiff has attempted to pivot to a new legal theory for his claims associated with his Citibank account.  He argues that reporting a lower past due balance on the charged off account conveys to potential creditors that he has an ongoing monthly obligation on this particular account.  I decline to address that argument at this time.  Plaintiff cannot use his opposition to a motion for judgment on the pleadings to amend the complaint.  See Doe v. Merck & Co., 803 F. App'x 559, 560 n.3 (2d Cir. 2020) (stating a plaintiff may not amend the complaint through any document short of an amended pleading).

Plaintiff also requested leave to amend the complaint.  Fed. R. Civ. P. 15(a) provides that leave to amend a party's pleading shall be freely given when justice so requires, but a court need not grant leave to amend if it can rule out any possibility that an amended complaint would succeed.  See Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999).

It may well be that plaintiff's proposed amendment is futile.  However, since neither party has provided me with a copy of the challenged credit report, I lack sufficient information to find futility.  Plaintiff is therefore granted leave to file an amended complaint, limited to asserting this new theory related to the Citibank account.  See Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007).

## CONCLUSION

Defendants' [25] motion to dismiss and motion for judgment on the pleadings are

13

granted.  The complaint is dismissed.  Plaintiff may file an amended complaint within 14 days of this order if he believes that he can state a claim consistent with this decision.

**SO ORDERED.**

                                                                                                   U.S.D.J.

Dated: Brooklyn, New York
       September 1, 2020